IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SALADO CREEK WATER AND AIR COALITION** <br> *Plaintiff,* <br><br> v. <br><br> **VICTORY ROCK TEXAS, LLC** <br> *Defendant.* | § <br> § <br> § <br> § <br> §    CASE NO. 6:21-cv-00848-ADA-JCM <br> § <br> § <br> § <br> § <br> § |

**PLAINTIFF SALADO CREEK WATER AND AIR COALITION'S
FIRST AMENDED COMPLAINT**

### I.   Introduction

1.  Salado Creek Water and Air Coalition ("SCWAC") amends its citizen suit against Victory Rock Texas, LLC ("Victory Rock"), under the Federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, *et seq.* SCWAC asks this Court to enter declaratory and injunctive relief, civil penalties, and other relief to correct Victory Rock's recurring, unauthorized emissions of dust onto neighboring properties and repeated violations of its temporary standard permit.

### II.   Jurisdiction & Venue

2.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (citizen suit provision of the Clean Air Act). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), and 42 U.S.C. § 7604(a) (injunctive relief and civil penalties).

3.  Venue is proper under 42 U.S.C. § 7604(c)(1), because Victory Rock is located in the Western District of Texas.

1

### III.  Notice

4. SCWAC has complied with the CAA's statutory notice requirements. *See* 42 U.S.C. § 7604(b). On May 3, 2021, in a letter sent by certified mail to Victory Rock and its registered agent, SCWAC gave Victory Rock notice of the violations identified in the First, Second, and Third Claims for Relief contained in this complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the May 3, 2021 notice letter is attached as **Exhibit A**.

5. SCWAC also mailed a copy of its notice letter by certified mail to the Administrator of the EPA, the Acting Regional Administrator for EPA Region 6, the United States Department of Justice through the Attorney General, the Commissioners of the Texas Commission on Environmental Quality ("TCEQ"), and the Executive Director of TCEQ.

6. On August 16, 2021, SCWAC filed suit against Victory Rock regarding the First, Second, and Third Claims for Relief contained in this complaint.

7. On December 15, 2021, in a letter sent by certified mail to Victory Rock and its registered agent, SCWAC gave Victory Rock notice of the violations identified in the Fourth, Fifth, and Sixth Claims for Relief contained in this complaint and of its intent to file suit after 60 days. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit B**.

8. SCWAC also mailed a copy of its second notice letter by certified mail to the Administrator of the EPA, the Acting Regional Administrator for EPA Region 6, the United States Department of Justice through the Attorney General, the Commissioners of TCEQ, and the Executive Director of TCEQ.

9. Sixty days have passed since SCWAC served Victory Rock and federal and state agencies with notice of its intent to sue for the violations described in this complaint.

10. Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in SCWAC's notice letters and alleged in this complaint.

### IV. Parties

**Plaintiff SCWAC**

11. Salado Creek Water and Air Coalition ("SCWAC") is a membership organization whose purposes include protection of the quality of the water and the air in the area of Salado Creek in Bell County, Texas. This region is defined by gently sloping terrain, diverse wildlife, and pristine air.

12. SCWAC's members and their families live in the rural communities surrounding Salado Creek. Emissions from the Victory Rock quarry interfere with the property interests of SCWAC's members. Those interests have been and will continue to be affected by Victory Rock's violations of its air permit.

13. The relief sought by this complaint will redress the harms to SCWAC and its members caused by Victory Rock's unlawful emissions. If successful, this action also will result in civil penalties that will deter future violations that would threaten SCWAC's members' use and enjoyment of the outdoors in the vicinity of Victory Rock's Jarrell North Pit (the "Quarry").

14. Victory Rock now has a permit allowing for the operation of up to three rock crushers at the Quarry. Declaratory relief, injunctive relief, and civil penalties will deter Victory Rock from violating the conditions of its permit, thus reducing the likelihood of future injury to SCWAC's members as the result of excessive dust emissions.

.

15. SCWAC and its members suffered actual, concrete injuries that are fairly traceable to Victory Rock's violations and are redressable by this Court. SCWAC has no other adequate remedy at law.

### Defendant Victory Rock

16. Defendant Victory Rock Texas, LLC ("Victory Rock") is an aggregate materials company specializing in producing aggregate materials for use in construction of roads and highways. Victory Rock operates a rock quarry off Solana Ranch Road in Prairie Dell, Bell County, Texas 76571.

17. Victory Rock is a limited liability corporation registered in Utah. Victory Rock therefore is a "person" under 42 U.S.C. § 7602(e) and subject to citizen suit enforcement under the CAA. *See* 42 U.S.C. § 7604(a)(1).

18. Victory Rock's registered agent is Northwest Registered Agent, LLC, whose mailing address is 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

### V.   Legal Background
### The Clean Air Act

19. The Clean Air Act is designed to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

20. Pursuant to CAA Section 110, 42 U.S.C. § 7410, each State must adopt and submit to the EPA for approval a State Implementation Plan ("SIP") to attain and maintain air quality standards. Pursuant to CAA Section 302(q), 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by EPA pursuant to CAA Section 110, 42 U.S.C. § 7410, or promulgated by EPA pursuant to CAA Section 110(c), 42 U.S.C. § 7410(c), and which implements the relevant

requirements of the Act. Upon EPA approval, SIP requirements are federally enforceable under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

21. Clean Air Act Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant. The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

22. Clean Air Act Section 111(b)(1)(8), 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories. "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(a)(2).

23. Texas' SIP implements these provisions by requiring that "before work is begun on the construction of a new facility or a modification of an existing facility that may emit air contaminants, the person planning the construction or modification must obtain a permit or permit amendment from the commission." Tex. Health & Safety Code § 382.0518. Texas issues standard permits for certain new sources of emissions, including for temporary rock crushers. Tex. Health & Safety Code § 382.05195. A violation of a condition of a standard air permit is a violation of the Clean Air Act and enforceable through a citizen suit.

### Citizen Enforcement

24. The Clean Air Act provides a cause of action for any person to file suit against any other person "who is alleged to have violated (if there is evidence that the alleged violation has been

repeated) or to be in violation of [] an emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1).

25. An emission standard or limitation, within the meaning of 42 U.S.C. § 7604(a)(1), is defined in 42 U.S.C. § 7604(f)(4). An "emission standard or limitation" includes "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4).

26. A Court is authorized to order injunctive relief as well as civil penalties in amounts up to $102,638 per day for violations occurring after November 2, 2015 and for which penalties are assessed after December 23, 2020. 42 U.S.C. §§ 7413(b) and (e); 40 C.F.R. § 19.4; *see Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 66 F.Supp.3d 875, 911 (E.D. Tex.—Dec. 17, 2014). A court issuing a final order in any CAA citizen suit may also award costs of litigation to any party. 42 U.S.C. § 7604(d).

27. Penalties are paid to the United States Treasury, except that the Court may authorize penalties up to $100,000 to be paid into a beneficial mitigation project fund used to enhance the public health or environment. 42 U.S.C. § 7604(g)(2).

28. 42 U.S.C. § 7604(a)(1) authorizes citizens to pursue enforcement actions for *wholly past* violations, so long as such violations were repeated and fall within the generally applicable statute of limitations. A citizen need not demonstrate that a violation is ongoing in order to pursue a Clean Air Act citizen suit with regard to the violations alleged. *Glazer v. Am. Ecology Envtl. Services Corp.,* 894 F. Supp. 1029, 1038 (E.D. Tex. 1995) ("plaintiffs may maintain a [Clean Air Act] citizen suit …, when they have alleged a past violation which has been

repeated"); and *Env't Tex. Citizen Lobby, Inc., v. ExxonMobil Corp.,* 824 F.3d 507, 519 (5th Cir. 2016).

29. Accordingly, the cessation of repeated violations does not preclude pursuit of a citizen suit for those repeated violations.

**VI.     Facts**

30. SCWAC fully incorporates **Exhibit A** into this complaint.

31. SCWAC fully incorporates **Exhibit B** into this complaint.

32. Victory Rock previously held an Air Quality Standard Permit for Temporary Rock and Concrete Crushers under TCEQ ID number R09108323940. This standard permit authorized air emissions from temporary rock crushing operations at Victory Rock's facility on Solana Ranch Road.

33. Victory Rock commenced rock crushing operations at the Quarry on or about January 18, 2021.

34. Victory Rock currently holds Air Permit No. 161554 authorizing the operation of up to three rock crushers at the Quarry.

35. Victory Rock's operations generate significant amounts of dust emissions. Blasting, digging, rock crushing, vehicle traffic, and raw material stockpiles all generate large clouds of dust.

36. Fugitive dust emissions escape beyond the property boundaries of the Quarry, polluting the air in the vicinity of the quarry where SCWAC's members live.

37. Victory Rock's dust suppression measures have been non-existent and/or ineffective.

38. The standard permit authorizing use of the rock crusher requires that water sprays be utilized at the crusher itself, all shaker screens, and all material transfer points. Roads in the

facility and raw-material stockpiles must be sprayed with water or a dust-suppressant chemical or covered in order to minimize dust emissions. These measures have not been followed.

39. Victory Rock operations interfere with SCWAC members' use and enjoyment of their property. SCWAC's members have observed dust on trees, rocks, and other structures on their property, as well as in the air surrounding their homes.

40. Some of SCWAC's members face serious health risks by breathing polluted air, which is why they moved to this area to begin with. They are in fear that Victory Rock's emissions will exacerbate their health conditions.

41. Victory Rock's application to TCEQ for a Tier II Crushing Standard Permit Authorization only identified one crusher to be operated at the site. *See* **Exhibit C** (Tier II Application). On or about January 18, 2021, Victory Rock installed a primary rock crusher at the site (Serial Number 31366), and a secondary rock crusher (Serial Number 31367).

42. An investigation conducted by TCEQ personnel documented that the secondary rock crusher operated at the Victory Rock site on 38 different days between January 18, 2021 and May 5, 2021 without notification by Victory Rock to TCEQ of this additional crusher.

43. Subsequently, a third rock crusher (Serial Number TRX450XPAOKDH0577) was delivered to the site on approximately April 5, 2021 and remained onsite until approximately May 5, 2021.

44. Prior to discovery of this third crusher by TCEQ personnel, Victory Rock provided TCEQ with no notice of the installation and operation of this crusher.

45. Crushing operations continued at the site until at least May 21, 2021. Between January 16, 2021 and May 21, 2021, Victory Rock did not document the duration of startup and shutdown of the rock crusher(s) at the site.

46. TCEQ investigation reports reveal that both the secondary crusher and third, portable crusher were operated in violation of 30 Tex. Admin. Code § 116.110(a).

47. In response to the two investigation reports and subsequent Notices of Enforcement by TCEQ, Victory Rock informed TCEQ via letter on June 21, 2021 that corrective action would be taken regarding the two crushers. Victory Rock did not deny the basic fact that three different crushers have operated at the site during the duration of authorization under its temporary standard permit.

## VII. First Claim for Relief
### (Violations of Condition 1(H))

48. SCWAC incorporates each and every allegation set forth above.

49. Victory Rock has violated CAA § 7411 by emitting pollutants in violation of its Air Quality Standard Permit for Temporary Rock and Concrete Crushers. *See* **Exhibit D** (Temporary Standard Permit).

50. Victory Rock's permit requires that the permittee install permanently mounted spray bars at the inlet and outlet of all crushers, at all shaker screens, and at all material transfer points and used as necessary to maintain compliance with all commission regulations.

51. Commission regulations provide: "No person shall discharge from any source whatsoever one or more air contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation, or property, or as to interfere with the normal use and enjoyment of animal life, vegetation, or property." 30 Tex. Admin. Code § 101.4.

52. Victory Rock failed to install water sprays in a manner to prevent emissions of dust from quarry operations carrying onto neighboring properties and interfering with SCWAC's

member's normal use and enjoyment of their properties. As a result, Victory Rock violated its permit on at least the following dates:

    a.    April 8,

    b.    April 9,

    c.    April 11,

    d.    April 15,

    e.    April 16,

    f.    April 19,

    g.    April 20,

    h.    May 3,

    i.    May 4,

    j.    May 5,

    k.    May 7,

    l.    May 8,

    m.    and May 10.

53. Each violation is a separate and distinct violation of 42 U.S.C. § 7411 of the CAA.

54. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

### VIII. Second Claim for Relief
### (Violations of Condition 1(I))

55. SCWAC incorporates each and every allegation set forth above.

56. Victory Rock has violated CAA § 7411 by violating applicable requirements of its standard permit.

57. Victory Rock's permit requires that the permittee minimize dust emissions from all in-plant roads and active work areas associated with the operation of the crusher by at least one of the

following methods: (i) covered with a material such as, but not limited to, roofing shingles or tire chips (when used in combination with (ii) or (iii)), (ii) treated with dust suppressant chemicals, (iii) watered, or (iv) paved with a cohesive hard surface that is maintained intact and cleaned.

58. It is SCWAC's informed belief that Victory Rock has not adequately implemented the required control measures for roads that are listed in its permit. Roads through the Quarry are unpaved and are not watered or sprayed with dust-suppressant chemicals as necessary to minimize dust emissions, as required. As a result, Victory Rock violated its permit on at least the following dates:

   a. April 8,
   b. April 9,
   c. April 11,
   d. April 15,
   e. April 16,
   f. April 19,
   g. April 20,
   h. May 3,
   i. May 4,
   j. May 5,
   k. May 7,
   l. May 8,
   m. and May 10.

59. Each day of violation is a separate and distinct violation of 42 U.S.C. § 7411 of the CAA.

60. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

## IX. Third Claim for Relief
**(Violations of Condition 1(J))**

61. SCWAC incorporates each and every allegation set forth above.

62. Victory Rock has violated CAA § 7411 by violating applicable requirements of its standard permit.

63. Victory Rock's permit requires that the permittee minimize dust emissions at all stockpiles by sprinkling with water or dust-suppressant chemicals or covering them.

64. Victory Rock failed to adequately sprinkle water or dust-suppressant chemicals over raw-material stockpiles, leading to significant dust emissions rising off those stockpiles and carrying over to neighboring property and polluting the air in the surrounding area. As a result, Victory Rock violated its permit on at least the following dates:

   a. April 8,
   b. April 9,
   c. April 11,
   d. April 15,
   e. April 16,
   f. April 19,
   g. April 20,
   h. May 3,
   i. May 4,
   j. May 5,
   k. May 7,
   l. May 8,

    m.    and May 10.

65. Each violation is a separate and distinct violation of 42 U.S.C. § 7411 of the CAA.

66. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

## X.    Fourth Claim for Relief
### (Violations of Condition 3(G))

67. SCWAC incorporates each and every allegation set forth above.

68. Victory Rock has violated CAA § 7411 by violating applicable requirements of its standard permit.

69. Victory Rock's permit requires that the owner or operator notify the appropriate regional office in writing at least 30 calendar days prior to locating a rock crusher at the site.

70. Commission rules provide that, before any work is begun on a facility, any person who plans to construct any new facility or engage in the modification of an existing facility which may emit air contaminants must either obtain a permit under 30 Tex. Admin. Code § 116.111 or satisfy the conditions for a standard permit. 30 Tex. Admin. Code § 116.110(a).

71. Victory Rock failed to provide notice to TCEQ of the location of the second rock crusher at the site and its operation between January 18, 2021 and May 26, 2021 and had represented to TCEQ that only one crusher would be operated at the site.

72. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

## XI.    Fifth Claim for Relief
### (Violations of Condition 3(F))

73. SCWAC incorporates each and every allegation set forth above.

74. Victory Rock has violated CAA § 7411 by violating applicable requirements of its standard permit.

75. Victory Rock's permit requires that notice be given to the Commission prior to returning a rock crusher to a site.

76. Victory Rock failed to provide notice to TCEQ of its construction and operation of the third rock crusher (Serial Number TRX450XPAOKDH0577) at the site.

77. The operation by Victory Rock of the third rock crusher on 16 days between April 5, 2021 and May 5, 2021 constitutes repeated violations of Condition 3(F) of the Temporary Standard Permit.

78. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

### XII.    Sixth Claim for Relief
### (Violations of Condition 1(O))

79. SCWAC incorporates each and every allegation set forth above.

80. Victory Rock has violated CAA § 7411 by violating applicable requirements of its standard permit.

81. Victory Rock's permit requires that permitted rock crushers meet certain requirements of the New Source Performance Standards developed by U.S. EPA. Among those is the requirement of 40 C.F.R. § 60.7(b) that "[a]ny owner or operator subject to the provisions of this part shall maintain records of the occurrence and duration of any startup, shutdown, or malfunction in the operation of an affected facility."

82. On information and belief, inasmuch as Victory Rock was asked in discovery for but has produced no data regarding the duration of startup or shutdown of its facility between January 18, 2021 and May 21, 2021, Plaintiff alleges Victory Rock violated this permit requirement.

83. A second requirement of the New Source Performance Standards is that of 40 C.F.R. § 60.7(b)(1), which says that operators must record the fact and results of the monthly

inspections, required by 40 C.F.R. § 60.774(b), of nozzles used in the operators' dust suppression systems.

84. On information and belief, inasmuch as Victory Rock was asked in discovery for and has failed to produce any record of the fact or results of monthly nozzle inspections between at least January 16, 2021 and May 21, 2021, Plaintiff alleges Victory Rock violated this permit requirement.

85. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

### XIII. Prayer for Relief

86. SCWAC respectfully asks this Court to:

87. Issue a declaratory judgment stating that Victory Rock has repeatedly violated the Clean Air Act and the conditions of its Air Quality Standard Permit;

88. Grant appropriate injunctive relief to ensure that Victory Rock prevents the repeated emissions of particulate matter and addresses the local environmental effects of its emissions;

89. Retain jurisdiction over this matter until such time as Victory Rock has come into compliance with the prohibitions, terms, and conditions of the CAA and the injunctive relief ordered by this Court;

90. Assess civil penalties against Victory Rock of up to $102,638 per violation, per day for violations that occurred after November 2, 2015, as provided by 42 U.S.C. §§ 7413(b) and (e) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19;

91. Award SCWAC its costs, including reasonable attorneys' fees, as authorized by 42 U.S.C. § 7604(d); and

92. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on February 18, 2022.

By:

/s/ Eric Allmon
Eric Allmon
Texas Bar No. 24031819
eallmon@txenvirolaw.com

**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Attorney for Salado Creek Water and Air Coalition*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff Salado Creek Water and Air Coalition's First Amended Complaint was served on all parties of record by electronic service through the CM/ECF filing system.

/s/ Eric Allmon
Eric Allmon

## **EXHIBITS**

Exhibit A – Plaintiff SCWAC's First Notice of Intent to Sue Letter (May 3, 2021).

Exhibit B – Plaintiff SCWAC's Second Notice of Intent to Sue Letter (December 15, 2021).

Exhibit C – Defendant Victory Rock's application to TCEQ for a Tier II Crushing Standard Permit Authorization (November 22, 2019).

Exhibit D – TCEQ Air Quality Standard Permit for Temporary Rock and Concrete Crushers